UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | 25-cr-00138-01 (RJL) |
| DREMALE VANTERPOOL : | |

**MOTION TO SUPPRESS EVIDENCE OBTAINED FROM CELLPHONE**

Mr. Dremale Vanterpool, through undersigned counsel, respectfully moves this Honorable Court to suppress the use as evidence at trial of photographs and videos seized from a blue iPhone.[1] The government is seeking to admit this evidence pursuant to Federal Rule of Evidence 404(b), ECF 32, and Mr. Vanterpool has moved to exclude the evidence because it is not relevant to, or admissible for, any non-propensity purpose, ECF 44. In addition to constituting irrelevant propensity evidence, the photographs and videos were obtained in violation of Mr. Vanterpool's Fourth Amendment rights because (1) the cellphone was unlawfully seized by United States Capitol Police officers; (2) Capitol Police officers unlawfully transferred the cellphone to the Ocean City Police Department; (3) officers with the Ocean City Police Department unlawfully obtained videos and photographs from the cellphone while executing a warrant that did not authorize the seizure of videos and photographs; (4) the warrant subsequently obtained by agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was obtained using tainted evidence obtained by Ocean City officers; and (5) the ATF's

---

[1] The government has not noticed an intent to use any other information obtained from the blue iPhone or any information obtained from any other cellphone. *See* ECF 32 at 10-13. Counsel notes that additional information was unlawfully seized from cellphones, but because the government is not seeking to use additional information from the blue iPhone or any information from the other cellphones, this motion addresses only the information (photographs and videos) the government seeks to use at trial. *See Id.*

delay in obtaining a warrant violated Mr. Vanterpool's Fourth Amendment rights.

## Statement of Facts

On June 7, 2023, police conducted a stop of a Nissan Rogue in the 1300 block of H Street, N.E. The car then left that area, and police stopped it again in the 3400 block of Minnesota Avenue, S.E., where according to officers, Mr. Vanterpool and codefendant Torrance Brock ran from the car. Both defendants were chased and stopped by police. Police allege that while running from them, Mr. Vanterpool discarded a firearm and crack cocaine, and Mr. Brock discarded another firearm. According to police officers, after stopping and arresting Mr. Vanterpool, they searched him and seized a blue iPhone and additional items.

Rather than returning the cellphone to Mr. Vanterpool, Capitol Police transferred the cellphone to the members of the Ocean City Police Department in Maryland, who were investigating a robbery.[2] At the time, the Capitol Police had no lawful authority to do so. Ocean City Police did not have a warrant for the cellphone at that time.

On June 14, 2023, Ocean City Police obtained a warrant to search the contents of the cellphone, but that warrant authorized the search of limited categories of data for the time period between June 2 and 4, 2023. The Maryland warrant authorized the seizure of:

> 1) Subscriber information, to include name, date of birth, address and phone number
>
> 2) Other numbers associated with aforesaid account
>
> 3) Content, and history of incoming and outgoing text message (SMS) and multimedia messages

---

[2] According to a government representation, *see* Attachment B (warrant obtained by ATF), a witness later identified someone other than Mr. Vanterpool as the perpetrator of the robbery. Mr. Vanterpool's name has been expunged from the police report of the robbery and charges were not filed against him.

2

    4) Call log detail to include cell site location and sector

    5) Data usage detail to include cell site location and sector

    6) Cellular site records shall include GPS location of the cellular site, as well as sector/azimuth information

    7) Type of phone affiliated with the account(s)

    8) A list of definitions pertinent to the records supplied.

*See* Attachment A (Ocean City affidavit and warrant). The warrant did not authorize the search for or seizure of videos or photographs.[3]

After Ocean City officers conducted a search that was broader than the warrant authorized and unlawfully seized evidence outside the scope of the warrant (photographs and videos), the Ocean City officers unlawfully transferred that unlawfully obtained evidence—the videos and photographs the government now seeks to introduce as Rule 404(b) evidence—to the District of Columbia United States Attorney's Office. The exact date of that transfer is unknown,

---

[3] The government has not disclosed the date that the witness to the robbery identified someone other than Mr. Vanterpool, and that identification was not in the affidavit in support of the warrant obtained by Ocean City Police. *See* Attachment A (Ocean City affidavit and warrant). If the identification occurred before the warrant was obtained, the exclusion of that representation from the affidavit in support of the warrant would constitute a material omission and would be an additional basis to suppress the use of the evidence obtained pursuant to the warrant. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court held that to challenge an affidavit's validity, a defendant "must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988). Although *Franks* itself concerned allegations of affirmatively false statements included in an affidavit, its reasoning "logically extends . . . to material omissions." *United States v. Johnson*, 696 F.2d 115, 118 n.21 (D.C. Cir. 1982) (quoting W. LaFave, Search & Seizure § 4.4 (Supp. 1982)). Mr. Vanterpool, through counsel, respectfully makes a specific *Brady* request for any information demonstrating that the identification of someone else as the perpetrator of the robbery occurred prior to the issuance of the Ocean City warrant.

but was prior to September 5, 2025, the date the government filed its notice of intent to seek to admit the evidence at trial in this matter. *See* ECF 32.

After seeking to use this evidence at trial, in an apparent belated effort to remove the taint of the unlawful seizure, the government, on September 26, 2025, sought a warrant for the evidence obtained from the iPhone. *See* Attachment B. A subsequent warrant cannot remove the taint of an unlawful search. Moreover, rather than attempt to obtain an untainted warrant, the government specifically used the unlawfully obtained evidence to obtain the warrant. *Id.* at 13-21.

## Argument

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search [or seizure] unless they first convince a neutral magistrate that there is probable cause to do so." *New York v. Belton*, 453 U.S. 454, 457 (1981). As the Supreme Court has repeatedly held, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted); *see also United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005).

**1. The cellphone was unlawfully seized by United States Capitol Police officers.**

The cellphone was seized without a warrant. For the reasons set forth in Mr. Vanterpool's Motion to Suppress Tangible Evidence, ECF 36, the seizure was unlawful. Where the government seeks to introduce evidence seized without a warrant, it has the burden of showing

that the evidence falls within one of the "few specifically established and well delineated exceptions" to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Katz*, 389 U.S. at 357 (1967); *Jackson*, 415 F.3d at 92 (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)); *United States v. Castle*, 825 F.3d 625, 634 (D.C. Cir. 2016); *Rouse v. United States*, 359 F.2d 1014, 1016 (D.C. Cir. 1966) ("[T]he police[] . . . have the burden of showing that a warrantless arrest was valid."); Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(b) (4th ed. 2004) ("if the police acted without a warrant the burden of proof is on the prosecution"). Because the government cannot meet its burden here, the evidence must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

**2. Ocean City Police unlawfully seized the cellphone.**

After the Capitol Police unlawfully seized the cellphone, Ocean City Police unlawfully obtained the cellphone from the Capitol Police. At the time of the transfer of the cellphone, Ocean City Police did not have a warrant. Again, the government cannot meet its burden of demonstrating that this warrantless seizure fell within one of the "few specifically established and well delineated exceptions" to the warrant requirement.

**3. Ocean City Police unlawfully obtained evidence outside the scope of their warrant.**

Although the Ocean City Police obtained a warrant before reviewing the contents of the cellphone, the review of the contents exceeded the scope of the warrant. The Fourth Amendment imposes two general requirements: "First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established, and the scope of the

authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized." (internal quotation marks omitted)); *see also Riley v. California*, 573 U.S. 373, 386 (2014) (Fourth Amendment requires police to obtain a warrant before searching data on cellphones.). "The Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 394 n.7 (1971). And it is settled law that items seized outside the scope of a search warrant cannot be admitted against a defendant. *Horton v. California*, 496 U.S. 128, 140 (1990).

In searching documents or electronic records, the need to prevent "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), is "particularly acute," *United States v. Heldt*, 668 F.2d 1238, 1260 (D.C. Cir. 1981). "Unlike searches for tangibles, document searches … tend to involve broad disclosures of the intimacies of private lives, thoughts and transactions." *Id.* In searching a phone, therefore, "responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy." *United States v. Ali*, 870 F. Supp. 2d 10, 39 (D.D.C. 2012) (quotation marks omitted).

Whether "a search exceeds the scope of a search warrant is an issue [] determine[d] through an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." *United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir. 2002), *opinion amended and superseded* by 298 F.3d

1021 (9th Cir. 2002) (Mem.). "The subjective state of mind of the officer executing the warrant is not material" to this inquiry, *id.*, because "[a] policeman's pure heart does not entitle him to exceed the scope of a search warrant, nor does his ulterior motive bar a search within the scope of the search warrant, where the warrant was properly issued," *United States v. Ewain*, 88 F.3d 689, 694 (9th Cir. 1996).

The warrant obtained by Ocean City Police authorized the search of the cellphone for very specific and limited categories of information. It did not authorize the seizure of videos and photographs. The seizure of the photographs and videos, therefore, was unlawful.

**4. The warrant obtained by ATF agents was obtained based on tainted evidence.**

Although the government obtained a second warrant after the cellphone was unlawful searched and evidence outside the scope of the warrant was obtained, the second warrant does not eliminate the taint of the Fourth Amendment violation. The government cannot violate the Fourth Amendment and then turn around and obtain a warrant in order to insulate themselves from their own misconduct. *See Murray v. United States*, 487 U.S. 533 (1988). That is what happened here. The police rifled through the cellphone beyond what was authorized and then sought a warrant using the unlawfully obtained evidence to support its warrant application.

In *Murray v. United States*, 487 U.S. 533 (1988), police officers illegally searched a warehouse without a warrant. They then returned the following day with a warrant. In applying for that warrant, they did not mention the prior illegal entry or include any recitations of their observations made during that entry. Below, the circuit court had held that the search was valid and untainted by the prior illegal entry because none of what the officers observed inside the warehouse was included in their probable cause submission. The Supreme Court, however,

7

reversed explaining that "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry," then the evidence seized pursuant to that warrant was still tainted and had to be suppressed. *Id.* at 542.

Here, the government went one step further in violation of the Fourth Amendment and specifically used the tainted evidence to obtain the second warrant. Thus, there is no doubt that the second warrant was tainted by the unlawfully seized evidence.

**5. The ATF's delay in applying for a search warrant violated the Fourth Amendment.**

Finally, the delay in applying for a search warrant for a seized cellphone itself constitutes a violation of Fourth Amendment rights. "To determine if an extended seizure violates the Fourth Amendment, [courts] balance the government's interest in the seizure against the individual's possessory interest in the object seized." *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019). A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes upon the defendant's possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 125 (1984).

The cellphone at issue here was unlawfully seized for more than two years before the second warrant was obtained. The cellphone was seized on June 7, 2023. The warrant application was filed on September 26, 2025, more than two years and three months after the seizure.

The discovery provided to defense counsel reveals no good reason for the delay. Under these circumstances, suppression is warranted. *See, e.g.*, *United States v. Mitchell*, 565 F.3d 1347, 1351-52 (11th Cir. 2009) (ordering suppression of evidence from a computer hard drive a after 21-day delay where the agent left for a training and stated he "didn't see any urgency" to apply for a search warrant); *Pratt*, 915 F.3d at 272 (ordering suppression of evidence from a

8

smartphone after 31-day delay where agents were indecisive about whether to seek a warrant); *United States v. Tisdol*, 544 F. Supp. 3d 219, 227 (D. Conn. 2021) (ordering suppression of evidence from a smartphone after 34-day delay where no explanation was offered other than failure to communicate); *see also United States v. Dass*, 849 F.2d 414, 414-15 (9th Cir. 1988) (affirming suppression where there was a delay of 7-23 days in getting warrant to search seized packages).

## Conclusion

Wherefore, for the foregoing reasons, and such other reasons as may be presented at a hearing in this matter, Mr. Vanterpool respectfully submits that the use as evidence of the photographs and videos obtained from the cellphone must be suppressed because they were obtained in violation of Mr. Vanterpool's Fourth Amendment rights.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500